Good morning and welcome to the Ninth Circuit. The case for argument this morning is Jewel versus the National Security Agency. As council knows, this case involves portions of which are classified records and also classified briefs. So I just want to underscore that we will not be discussing any classified materials this morning. Council for Jewel may proceed. And you have 20 minutes, and you can let us know about rebuttal time. There is a clock, as you'll see on the screen, just like in the courtroom. And you can watch your time as well. Thank you. Good morning, your honors. May it please the court. I'm Richard Wiebe, counsel for plaintiffs and appellants. And I would like to reserve five minutes for rebuttal. At stake here are the civil liberties of all of us to be free from dragnet government surveillance of our communications. Congress has directed courts to rule on unlawful surveillance claims, even when they involve state secrets. But the district court turned that rule on its head and held that courts are barred from deciding these claims if the government asserts the state secrets privilege. We ask this court for three rulings. First, to rule that the case cannot be dismissed under the state secrets privilege, but instead must go forward under section 1806F using secret evidence. Second, to rule that there is sufficient evidence from which a reasonable fact finder could find the plaintiff substantive. Third, to direct summary judgment for plaintiffs on their Fourth Amendment claim, finding that the government's upstream mass surveillance of internet communications violates plaintiff's Fourth Amendment rights. Our first issue is that the district court got the law wrong in dismissing plaintiff's claims under the state secrets privilege. As Fezaga explains, Congress used section 1806F to completely displace the state secrets privilege and bar any state secrets dismissal in electronic surveillance cases. Fezaga holds that section 1806F is exclusive and mandatory. And section 1806F, by its own terms, applies notwithstanding any other law, including the state secrets privilege. Another statute, section 2712, also displaces the state secrets privilege for plaintiff's statutory wiretap act and stored communications act claims, directing that they be decided using the in-camera procedures of section 1806F. Congress further provided that any relevant secret evidence must be used rather than excluded. Both section 1806F and section 2712 so dictate, as does Fezaga. Now, the government contends the plaintiffs have to prove they are aggrieved persons before the court can use section 1806F. And that argument fails for at least four reasons. First, the court doesn't need to decide whether an aggrieved person showing is required because plaintiffs have already proven they're aggrieved using public evidence. So even if the government were right, plaintiffs have met that test. Second, the government is not right. This court held in Fezaga that if a plaintiff has a well-pleaded electronic surveillance claim, the district court must use section 1806F to review any secret evidence. Now, Fezaga lays this out. It first decided the plaintiffs stated an electronic surveillance claim because they have well-pleaded allegations that they are aggrieved persons. That's at page 1030. Later at page 1053, Fezaga asks whether the plaintiffs are aggrieved persons who may use section 1806F in their case. Relying only on the plaintiff's allegations, it holds they are aggrieved and can use section 1806F. Fezaga, read. Yes. Let me ask you if we credit your argument that Fezaga resolves the state secrets displacement, although the government has a variation on that argument and the district court did invoke the word state secrets. But if we were to credit your argument and conclude that 1806F does apply here, and if it were remanded to the district court, would the district court be doing anything different on remand than it has already done in terms of reviewing all the public and classified evidence? Certainly it would be barred from dismissing the case under the state secrets privilege as it did. That would be one clear difference on remand. Now, we don't have access to the courts, the district court's classified opinion or to the classified evidence. So we don't know what was in the evidence or what the district court did with that evidence. Our position is, however, that in resolving the issues in this case, the district court is required to look at both the public evidence and the secret evidence and use them holistically to decide all the issues in the case, standing, the brief person, the merits of our surveillance claims. So just hypothetically, it seemed to me in reading the decision that the district court said, it essentially did what you just laid out. So what I'm trying to understand is what might be the difference between that without talking about the merits of what he might've divined from all the evidence holistically, what would be the difference on remand? I, it's, again, it's a little difficult for us to answer not knowing exactly what he did do in the classified. I'm asking procedurally. Yes, what should have happened before and what should happen on remand is the district court should look at all of the evidence, both public and secret and use all of the evidence to decide all of the issues in the case. Is, does that answer the question? Yes, thank you. Certainly. Mr. Wavy, let me ask you a question. If the district court judge, after looking at the confidential material, comes to the conclusion that he agrees with the government that there is no way that this case can go forward without revealing secrets, which would imperil bravely the national security, is he to reveal those nonetheless? I think it's important to understand that the district court under section 1806F uses the secret evidence, but without revealing. It uses the evidence to come to a decision. It can then, that decision can take the form, for example, of a one sentence public judgment, plaintiffs win, plaintiffs lose, together with a provisionally classified opinion. So it's not necessary for the district court to reveal the evidence in order to rule on the case. But if it rules that the plaintiffs win, doesn't that mean that the plaintiffs have established that they were surveilled by the government unlawfully? It certainly does. And that's exactly what Congress wanted to happen in these cases. If you go back and look at the history of FISA, which Buzaga lays out in some detail, it was enacted in 1978 after the church committee had done an extensive examination of all the unlawful surveillance that- I'm asking further. Certainly. The judge in his own evaluation of the evidence comes to the conclusion that if the plaintiffs are to be publicly known to, that will itself reveal a state secret, which would gravely harm the national security. He should go ahead and do it nonetheless? Again, I think there are many procedural tools that district court can do to avoid that. And especially in this case, which involves mass surveillance. This is not a case where plaintiffs are alleging they were individually targeted for surveillance. They're alleging that along with millions and hundreds of millions of other Americans,  Exactly. And that's exactly the case. And that's a state secret that may not want to be revealed. The extent and ability of the national government to surveil people in a mass way, because then the persons who don't want to be surveilled will know what methods of electronic communication they should not use. Well, I think in this case, that issue doesn't really arise because the government has made extensive public disclosures about all three of these programs. They've made the PCLOB, the Privacy and Civil Liberties Oversight Board, issued an extensive report on the phone records program and on section 702 of the upstream program. Let me put you in the question, has the government ever publicly and authoritatively stated that they had a dragnet operation such as you described? And if so, would you tell me when? I'm sorry, I didn't hear the last part of the question. If so, would you tell me when? In other words, what particular governmental acknowledgement of your alleged dragnet operation do you claim has been done publicly? So the government has, with respect to the phone records program, for example, has issued the PCLOB report. And in the PCLOB report, that's at ER-177 and ER-270, it admits that for those companies that participated, it collected all of the phone records, phone records for all of the customers of those companies. There's also a FISC opinion, Foreign Intelligence Surveillance Court, at ER-666, that also confirms this. The government disclosed to the New York Times that AT&T and Verizon Wireless were participating companies. AT&T was our client's phone company. That's the NSA letter to the FISC. And that'll- Let me take you to the NSA letter for a second. Surely. The NSA letter has several, I mean, the NSA letter that was procured from the New York Times, and the government claims was procured by inadvertency, lists a series of telephone companies that were objects of the order. But as I remember reading it, there was a primary order, and there would be no production necessary unless a secondary order were entered. Is there any evidence of any secondary order? The, what that letter identifies are the companies that are subject to the secondary order. And- My question is, do you have any evidence of the secondary order ever was issued to those companies? Our evidence is the letter itself, because- The letter doesn't say that. The letter says, no production unless a secondary order is issued. Question, is there any evidence of a secondary order? We don't have that secondary order in the record. My question then, Mr. Ruby, is going to the second part. If the district court were to rule for your clients, that doesn't it follow as a matter of logic that the court would need to rule that they were surveilled and the surveillance was not lawful? Yes. Okay. But if in order to make that conclusion, the district court hypothetically needed to rely on classified evidence, which it then could not reveal hypothetically, and it then couldn't make the conclusion, the two conclusions that I set out, wouldn't that satisfy 1806? If it could not make those conclusions? Well, it could make those conclusions, but it could only make them by virtue of invocation of classified evidence. If I'm understanding the question correctly, Your Honor, that is the path that Congress set out for courts in section 1806F. It intended them to use the secret evidence to decide the merits. As I understand from your question, Your Honor, that would be deciding that plans were subject to unlawful surveillance. And that's exactly what Congress intended to happen. That's why it created section 1806F, to create a secure way in which the evidence itself always remains secret, yet courts can offer a remedy and rule on the merits of electronic surveillance cases. But there is a certain circular aspect to this. And that is if we were hypothetically saying the court would have to say they were surveilled, but if the court could not say that without invoking classified evidence, in this case, would that not mean that the court had complied with its 1806 obligation, but would be unable to rule in your client's favor? I don't think section 1806F leaves open that path. I think Congress's clear intent was a ruling on the merits. Again, there are ways of protecting the evidence through a one sentence public ruling, followed by a classified opinion, but I don't see any way that Congress left open a door to avoid ruling on the merits in a case in which section 1806F involves. I know you wanna save some time for rebuttal and we'll give you that time. I do have one clarifying question. I have a lot of questions, but let me just ask you one. And that is, is it the case on the Fourth Amendment internet claim that the district court did not rule on the merits of that claim? It did not rule on the merits. Similar to the other claims, it issued two alternative rulings. One, that our public evidence was insufficient. And second, that even if our public evidence were sufficient, the state secrets privilege barred litigation. Thank you. Mr. Boussa. Good morning and may it please the court. My name is Joe Boussa on behalf of the government and the individual capacity defendants. The district court here got this one just right. First, after reviewing the voluminous classified record, it properly concluded that publicly revealing the information at issue here regarding stand-in, whether plaintiffs were surveilled or not, would itself gravely damage national security. We're providing a roadmap for our foreign adversaries and terrorists to learn which channels of communication are or were open and which are not. The district- Mr. Wybie's suggestion that a one sentence decision by the district court, the plaintiffs were unlawfully surveilled. Wouldn't that be sufficient to award them relief and not reveal any secrets? Certainly not, your honor. Such a decision would reveal which plaintiffs either have standing or do not, and would allow a foreign adversary to reverse engineer back to their allegations about how they communicate, what they do, and disclose the very information at issue that's a state secret, which is which channels of communication are open and which are not. That's just not a viable way of avoiding such a disclosure. It would actually mandate such a disclosure and reveals the public- Your colleague says, well, stop just a minute. That might've been the case before we had precedent that the state secret's privilege has been displaced in this situation by 1806. So if you use 1806, and if there's classified information under your theory, you could never get out from under the box, right? Out from under the classified information. A plaintiff could never bring a case because they don't know if they personally have been surveilled. A few responses, Your Honor. The first one is that 1806, by its plain text, doesn't apply to determine standing. It only applies to determine the legality of surveillance. There's nothing like the kind of language you find in other statutes where Congress has created the vehicle that requires the government to, quote, affirm or deny whether surveillance of certain types has occurred. That's 18 U.S.C. 3504. We find nothing like it in 1806 F. That's a clear textual indication that 1806 F is only for the resolution of the legality of surveillance, not for what plaintiffs choose, would like it to do here. And that's for very, very good reasons. As the Supreme Court laid out in footnote four in the majority opinion in Clapper, creating an ex parte in-camera procedure for determining standing in a case like this would provide a roadmap for foreign adversaries to learn whether or not they have been surveilled. That is extraordinarily dangerous. The Supreme Court declined to create such a procedure in Clapper, and Congress, for all the same reasons, declined to create such a procedure in 1806 F. And that's why 1806 F contains no language allowing it to be used to determine standing. That's a predicate Article III question, not something to be assumed in order to reach the merits of a case. So let's imagine that one plaintiff had been surveilled, just for hyper-talking purposes. Would it not be possible under 1806 to have a classified determination that plaintiff X had been surveilled, and then a determination whether that was legal or not, and if it was not lawful, then that plaintiff would receive relief? No, Your Honor, because someone watching those procedures and watching the outcome of them would learn the truth or the falseness of the jurisdictional allegations. That is, they would learn the precise channels of communication that are or are not open. That's a state test. How would they learn that if that was classified? I mean, it doesn't, you know, take a computer genius at this point to say we have X number of named plaintiffs. We have the government acknowledging these programs publicly. We have one of the programs that is ongoing. So all of that is public, is it not? We have publicly acknowledged the existence of these programs, two of which are discontinued, but we have maintained as state secrets all of the relevant operational details, including which service providers may or may not have participated in each program and the specific details about how each program was carried out. Plaintiffs make allegations about all of that, and it's their speculation about how these programs are carried out that they say establishes their standing. My simple point is the hypothetical procedure you outlined where an 1806 F procedure results in a one-line ruling, plaintiff wins or plaintiff loses, does not protect that state secret. Someone watching that litigation would be able to determine, oh, this plaintiff won. I can now look back at their jurisdictional allegations, and now I have confidence that because that plaintiff had standing, the programs are carried out in the way that they alleged. That's extraordinarily interesting. Somebody could do that right now. You don't have to wait for a ruling from the court to decide you wanna take a look at all the publicly available information, correct? Oh, no, Your Honor, the difference there is that the state secrets privilege has always been understood to protect from public revelation of this kind of information we're talking about. This is just the kind of national security harm that was at issue in Al-Haramain, and the same issues about public disclosure apply here as applied there. And just to highlight- The question, though, is if the state secrets privilege is displaced according to Fezaga in the case of 1806, you keep hearkening back to the state secrets privilege, and you say it only, as I understand it, you've stated it only applies as to a determination of lawfulness after plaintiff's standing has been demonstrated using non-classified evidence. So the question here is that the plaintiffs have very specific allegations, and their argument, as I understand it, is you don't have to decide that plaintiff A, B, or C was surveilled when you have mass surveillance and we have, in their view, documentation. So how do you overcome that? Because that's different than perhaps aggrieved, which we've already said is a merits determination. Your Honor, a bottom-line ruling in favor of any plaintiffs, and again, this is just a hypothetical, a bottom-line ruling in favor of any of them would amount to a disclosure of the state secrets at issue, which is whether any of these plaintiffs were not surveilled based on their specific jurisdictional allegations. That is extraordinarily different, and it's very- They could never win anyway, in your view. Is that right? Because in your very, it would require and would reveal a state secret. So they could never win, no matter what they allege. In this case, that is correct. The district court, properly in addressing the effects of the invocation of the privilege, properly determined that any further adjudication of standing would inevitably disclose state secrets and thus require dismissal. Now, I have two points about FISAGA that I wanna make sure that I get to. The first, as we've already discussed, is that 1806F only applies to determine the merits of a legality question. It doesn't apply to this predicate question. So state secrets privilege is only displaced as to that merits determination, not as to standing. My second response, your Honor, involves several critical, important lines from FISAGA itself. First, the panel wrote that, critically, the FISA approach does not publicly expose the state secrets. That was critical to the determination in FISAGA. And the concurrence in the denial of rehearing en banc in footnote one specifically notes that the displacement is not complete or absolute, as my friend on the other side says. There, in that footnote one of the concurrence, all three panel members actually agree with this footnote, says that in the event that applying 1806F procedures might lead to a public disclosure of state secrets, the privilege comes back into play. And so that's why we say, even if 1806F could be thought to apply to determine standing in a case like this, despite its plain text, in this instance, issuing any bottom line ruling would reveal a state secret regarding standing. Could I ask you, just to clarify then, FISAGA, as I understand it, is now final and there's been no cert petition filed in that case? Margaret, wait a second, Judge Gould. On my screen, Judge Baird dropped off. He just now dropped off, yeah. Let's wait just a moment. He didn't drop off before. Do you want us to- Let me just talk to Sam. We can call Sam on his cell phone. Yes, I'm here, Judge. He should be able to reconnect, but it'll take a minute or two. All right. Dave, if we could pause this and wait for him, that'd be great. We'll wait for him. We'll stop the clock and give Mr. Luce his appropriate time. Yes? I'm back with you. I'm sorry, my internet just completely collapsed. That's what happens sometimes. So we'll resume the argument. Mr. Luce, I'll give you a little extra time. And of course, I'll give Mr. Wiebe extra time because we kind of interrupted the flow of where you were. But I did want to ask one question, which I was about to ask when Judge Baird disappeared from the screen. And that was just to confirm that PSAGA is now final and the government did not file a CERT petition, is that correct? Your Honor, the time to file CERT has not yet run. I believe that runs on December 17th because during the pandemic, the Supreme Court's extended the time to 150 days. And so that has not run yet. We're still considering whether to seek CERT. If we were to seek CERT, the Supreme Court were to grant CERT, obviously that might present additional bases for affirmance. But I think the key point here is that even under PSAGA, the government should prevail. The district court got that right. And just to highlight why that is, in PSAGA, the panel dealt with a dismissal outright on the pleadings, on the assumption that adjudicating the merits of the legal claims would reveal state secrets. The panel reversed and said, no, 1806F can apply to determine those merits. So it's going to go back to district court. But the key thing is that the panel there made clear that plaintiffs would ultimately have to prove their jurisdictional allegations. At page 1030 of 965F3rd, the panel said that the claims allegations are sufficient, if proven, to establish that plaintiffs are aggrieved persons. And then in the remand instructions, that's Penn site 1067 and footnote 51, the court said that FISA covered electronic surveillance might drop out of consideration in PSAGA, if, for instance, plaintiffs are unable to substantiate their factual allegations. Now that's just like what this court did in the first appeal in this case. The question there was standing on the pleadings and the court assumed the truth of the allegations at that stage. But the court didn't prejudge whether plaintiffs here would be able to make outstanding on summary judgment. In fact, the court warned they would have to have evidence to that effect, and that some Sixth Circuit precedent indicated they might have some trouble down the road. Now, also just to highlight, the district court here actually prefigured FISAGA. Before FISAGA was issued, the district court concluded that 1806F would display state secrets to some extent to determine the legality of certain surveillance. The district court then warned at that point that plaintiffs would have to come up with evidence supporting their standing to get past summary judgment and cited Clapper for the possibility this would be quite difficult to do. And in fact, that's how it's proven. Now, that just shows how consistent this case is with FISAGA, where the district court prefiguring FISAGA nonetheless reached the conclusion it reached here in its final order. And that's because further adjudication of plaintiff's standing, which is separate from the merits, would disclose state secrets that would gravely harm national security. I'm sorry, Judge Beyer, did I cut you off? Yeah, no, no, I'm fine, I'm hearing you. I was just going to say, if there are no further questions, we're happy to rest on the briefs, but I'm also happy to answer whatever questions the court may have. The only question- We have a question. Go ahead, Judge Beyer. No, I don't have any questions. All right. Judge Kuhl? I do, one second. My question- Well, I do have one question. Go ahead, Judge Kuhl. Okay, well, my question just related to what's been said in the Jefferson case. So if under that en banc decision, if there is a inability to prove a defense, whether on merits or standing, based on the inability to do it without classified information, is dismissal the proper remedy? Yes, Your Honor, that's one of the situations that would require dismissal under the privilege. And the district court here evaluated whether further adjudication of standing would be possible without threatening state secrets and concluded the answer was no. That was a well-reasoned decision, fully supported by the voluminous classified record. Judge Beyer? I have no questions. Well, pardon me, I did have one question, but I think I'll reserve that for Mr. Wybie on his rebuttal. All right, Mr. Boussa, I have a question on the Klein affidavit. If we were to determine that exclusion of that affidavit was inappropriate, would there then be sufficient public information to establish standing? No, Your Honor, for the following reason. Plaintiffs have an elaborate theory about what they think the Klein affidavit shows about the NSA coming to interview somebody for a so-called special job. But that doesn't get them nearly where they need to go because the key point here is they have nothing but speculation about what was happening inside a particular room, inside a particular facility in San Francisco in 2003. It's undisputed, as the district court said, that, quote, Klein can only speculate about what data were actually processed and by whom in the secure room and how and for what purpose, as he was never involved in its operation. That's page 53 of the excerpts. And that's true even if the Klein affidavit comes in, Your Honor. And I understand there's a government's position that the government has never publicly identified service providers that were involved in the disclosed programs, is that correct? That's exactly right, Your Honor, with one caveat that we note in our brief where the government has officially acknowledged one secondary order sent to Verizon Business Network services for one 90-day period, and that's it. There have been no other official disclosures on this score. And just to turn back to something that Judge Bea was saying in a colloquy with my friend on the other side, the alleged NSA letter here doesn't, that itself is not alleged to be a secondary order. So that's also a problem for them along with Al-Haramain, which I think covers the NSA letter, the alleged NSA letter here. And apart from the NSA letter and the AT&T-Klein scenario, if you take the secondary letter with the Verizon order for a defined period of time, and we know the various programs which have been now publicly disclosed, if the allegation is that there was mass surveillance, would that not be sufficient for standing to at least then put you into the merits of whether a particular individual is an aggrieved person? No, Your Honor, and the D.C. Circuit got this exactly right in Obama v. Klayman, which was on all fours with the hypothetical you just raised. And in Obama v. Klayman, the allegation was, look, this is mass surveillance. The plaintiffs there said they subscribe to Verizon, and the District Court cited public information about Verizon's subscriber base and how large it is. And the District Court speculated that, look, this program couldn't have existed without participation of that company. D.C. Circuit reversed, correctly so, applying Clapper, saying, look, that's just speculation. Every plaintiff needs to have evidence that they were subject to the alleged programs whose legality they seek to challenge. And speculation about the NSA's priorities and what trade-offs it was willing to make in seeking to carry out those priorities, that's not evidence, and it's not good enough to get over the standing hump. Do my colleagues have any further questions for Mr. Busse? I have none, thank you. No? All right, we'll turn back to Mr. Weeby then. Thank you, Your Honor. Mr. Weeby, let me ask you a question. Yes. If you prevail and we remain with the requirement that the District Court judge use the classified material to determine whether there's been unlawful surveillance, and he can make a one-sentence statement, how do you prove damages with a one-sentence statement? Don't you have to know not only that it was done, but who the NSA allegedly disseminated the surveillance to? Who talked about it? Doesn't that go to your damages argument? Certainly, we would brief and argue damages based on the public record. The court at that point also would have the option of giving us access under protective orders and security clearances to the classified evidence to more thoroughly argue that point. It's also important. So the damages are under our statutory claims under section 2712, and 2712 has an exemplary damages provision. So even without knowing the facts that Your Honor has alluded to, we would still be able to pursue those exemplary damages under 2712. Yeah, so on that point, under federal law, to get exemplary damages with no actual damages proved? Well, we believe we would be able to show actual damages just from the fact of the surveillance occurring unlawfully. And obviously, this case is far from getting to those issues, and we haven't briefed or presented our arguments on it, but we're- Wouldn't that go to redressability in part, though? I mean, if you could get through all the other hoops and then you're at the end of the road on damages, but you can't get that redress, why isn't that an issue to be considered? We briefed the redressability point in our papers, and the bottom line of that is redressability is if there is a favorable decision in plaintiff's favor, including an award of relief, would that relief match up with their injury? Would it give them something for their injury? And certainly statutory damages at the very minimum would give that, and I'm confident we can pursue that. It's not a threshold issue at this point. It might be an issue, though, down the line, and my question would be that you wouldn't be able to award those necessarily in the abstract. Would you not need to know which plaintiff, how many times they were surveilled, the circumstances, and other details that might be classified? Again, a couple of responses. First of all, at that point, the court could give us access to the classified evidence under security clearance and protective orders. That's what the last sentence of 1806F gives the court the authority to do. Even without that, again, we've got statutory damages, which in our view doesn't turn on the degree of actual damages, and we would pursue those certainly at a minimum. And again, even if we don't have access to the evidence, the court would have access to the evidence in terms of the extent of surveillance and could award damages based on its knowledge of what our damages are, even if we don't know the exact extent of them. Are you waiting a jury? Again, our damages claims are only under Section 2712. We have equitable relief claims under the Fourth Amendment. Under 2712, the action is tried to the court. That's 2712B3, Congress has provided that. And that's another way Congress has acted to protect secrecy in this event is by making these claims tribal to the court rather than to a jury. There were a couple of other points, if I may respond to. First of all, it's no secret to any adversary that AT&T is involved in FISA surveillance. AT&T admits it performs FISA surveillance on behalf of the government. That's ER 911. That's a transparency report they publish every six months talking about how they provide FISA surveillance to the government. We have the NSA letter. We have the NSA Inspector General report. Whether or not those are admissible, they're certainly front of mind to any adversary in terms of figuring out does AT&T perform surveillance? So I think there's no secret to any adversary that AT&T performs that. Second, and this is an important if technical point, a judgment in plaintiff's favor would not conclusively reveal AT&T's participation. And that has to do with a technical fact, the fact that a communication and communication records are in the hand, not just of AT&T, but also in the hands of all the other telecommunications carriers that that communication passes through. And so just simply saying plaintiffs prevail doesn't reveal whether the government got one end of the phone call from AT&T or the other end from the Verizon person who was being called by our plaintiff. So it's not even conclusive on that point. On the, the government says 1806 F is limited to legality of surveillance. Fazaga says that once the evidence is in, it's in for all purposes. That's in Fazaga, the issue was once the evidence comes in, is it limited only to be used for determining the lawfulness of the electronic surveillance or could the Fazaga plaintiffs use it to support their religious discrimination claims? And the courts says, yes, you may extend it to the religious discrimination claims as well. The Clapper, Clapper didn't address 1806 F, didn't address 2712, didn't suggest that courts could override those statutes and dismiss cases in the face of what Congress has commanded in those statutes. The Clapper hypothetical was targeted surveillance, unlike the mass surveillance here. And the hypothetical was, well, a terrorist could file a suit to find out if they were targeted. In our mass surveillance claims, who is targeted is completely irrelevant to our claims. It's not even, there's no reason to produce it to the court. Nothing in our claims turns on the identity of who's targeted and a judgment would not reveal who's targeted. El Jaramain, the secret document remained secret. Here, the documents we're relying on are in the public. The El Jaramain document was never published, never revealed to anyone. The government successfully retrieved it. Mr. Wiebe, could you now wrap it up, please? Yes. We've given you some extensive- I appreciate the extra time, Your Honors. Thank you very much. The District Court's state secrets dismissal leaves citizens powerless to challenge any unlawful mass surveillance programs because those programs always involve secrets. But Congress determined that unlawful surveillance claims should be decided on the merits under the protective shield of 1806F. As in Fezaga, this court should again reject the government's assertion of the state secrets privilege, proceed forward under Section 1806F, and conclude that the evidence shows plaintiffs have standing and that their Fourth Amendment rights have been violated. Thank you, Your Honors. Thank you. Thanks to both counsel and others who submitted briefing, and also thank you for very thoughtful arguments today by both counsel. The case of Jewell versus National Security Agency is submitted and we're adjourned for the morning. Thank you. This court for this session stands adjourned.
judges: McKeown, Gould, Bea